First, I came into this case rather late. I reviewed all of the pleadings and the briefs. I know the judges have reviewed all of the paperwork. But there's no reason why this wild card exemption should not be approved. It's very clear that I can't see any valid objections to using this wild card. Now, his ruling was based on what? On bad faith? Is that the? It was, but I don't know where the bad faith is. Originally, Mr. Guevarra sincerely believed that he had no interest in the property. He listed the property on the petition. He listed it at a zero value because he, well, he listed it because his name was on it. He listed it at a zero value because he believed he had no interest in it. He had just helped his nephew purchase the property. Used his credit to help his nephew purchase the property. And he maintained that basically until a court order came down from Judge Hyme declaring that he was a half owner. So, at that point, he eventually believed that then he, seeing as he was an owner, whether he wanted to be an owner or not, that he could exempt the, he could use a wild card to exempt some of the proceeds of the sale of the property. And I'm not disturbed that he's exempting the proceeds of the sale rather than the original property because I think that's perfectly okay. He didn't attempt an exemption while concurrently claiming an interest. He only claimed an exemption once the court determined that he had an interest. Yes. Let me ask you this. Although it's not maybe as loudly articulated as it might have been, there seems to be some concern here about where the money might go. How do you, how do you think we should address that question, if at all? I don't see that it has any effect. Okay. Really, I could elaborate more, but I don't see that it's my business or anyone's business what he does. Well, there's probably two levels to the question. One is, you know, is it really clear that that's an issue? And you might tell me it isn't. And you might also say that, well, even if it were factually, in terms of a grub stake, it really doesn't matter. A grub stake is just a generic, you can exempt a certain amount of money. I think that's correct. You can exempt, and it doesn't matter what you do with it. Okay. Is there any case law cited that you're aware of where anyone has ever asked about the use of the wild card exemption? No, I don't know. Okay. I haven't found any. Okay. So what should be the, should there be limits on the, I mean, it's called the wild card exemption. What limits should be placed on the use of that exemption? The full exemption, I forget now, is $27,300 and something. So the monetary limit, in your The monetary one is the only one that you think is appropriately considered? Yes. Okay. Try and get my microphone better. Do you have any comments on the cases that were cited that there's this good faith test under state law? I don't see a problem with that. There's no indication that there's not good faith. So if there was evidence of bad faith, then using the good faith exemption would, or a good faith would be a good basis for denying the exemption? Is that your view? No, I don't think that. The exemptions there are good faith, bad faith. It's in the statute. What about Law v. Siegel? There was, that was an atrociously bad case. And that was an extreme case. Here, there's no, there's no bad faith shown. He listed the property on the schedules. He sincerely believed that he did not own a portion of it. When he was informed that, by a court order, that he did own it, then we eventually proceeded with the wildcard exemption. Okay. All right. Anything further, or do you want to reserve the rest of your time? Reserve the rest. Okay. All right. Then Mr. Spitzer. Good morning, Your Honors. Barry Spitzer, representing Chapter 7, Trustee Douglas M. Watley. And we believe that the, this case does have a bad faith element under state law, which the law case does specifically allow. The Justice Scalia stated, where a debtor claims a state-created exemption, the exemption's scope is determined by state law, which may provide that certain types of debtor misconduct warrant denial of the exemption. Let me ask you this, I mean, to be real blunt. I've met Mr. Law. I've had to imagine a worse case. And yet, the exemption was upheld. So, I mean, looking at that through that lens, how really bad faith? I mean, I think you argued equitable estoppel, which I think, you know, which the judge did not rule on. But where in the cases is there anything that says it's bad faith, you can have a credit card exemption and use it for whatever you want to? I believe, in fact, Judge Brand's colleague on the Central District LA Division, Judge Robert Kwan, has ruled twice under these fairly similar circumstances in the Aubrey case and in the Gonzales case, both of which are published decisions where an equitable estoppel was used. Let me stop you. Had the judge ruled on equitable estoppel, I think we could consider that. But he didn't, did he? He did not. He did not. Okay. So, I think we're trying to Yeah. Yeah. And Judge Hyme did rule on that as if he does state one aspect of the debtor's burden of proof, which the debtor does have the burden of proof on once an exemption is challenged under California law, that the the Bertozzi versus Swisher case and uses that as an analogy to... Well, the reason why I'm not sure what to make of that case, because as I read it, that's more a case of was the property appropriately characterized in a way that would have fit under the exemption? That's the dray horse versus racehorse case, correct? Yes. The reference to, I In that case, to me, I mean, I don't see how the case turned on good faith as much as what kind of horse was this? And was this the kind of property that California was trying to exempt? So, so where, how do I, why do I have that case wrong? That's what the case says. And I do believe, I mean, I, that's what Judge Hyme ruled. Well, can I, well, I mean, let me, let me suggest, for example, if this were straight off, straight on Homestead exemption, and the debtor said, I don't live there. It ain't mine. You know, I just cosign. I think you'd be right there with Bertozzi, right? Yes. But for, but what do we do with a grub stick where it's just, well, he doesn't get this money. Right. And Judge Hyme, as you read, and alluded to earlier, went into, well, what is the use of the money? And is he going to just be giving it to his nephew? And that's where Judge Hyme did have an issue with it. One of the things on this case is the, all along, there was no mistake. There was no hiding. From the very minute I got into the case, it was my, my employment application clearly states the purpose of my hiring, to sell the estate's interest in the real property. That was on October 25, 2018. It wasn't until just, I'm sure, I'm sure it was a coincidence. But a year, exactly a year ago today, March 18, 2020, was when the exemption was finally changed after I filed on behalf of the estate an adversary proceeding. Now, I dismissed the adversary proceeding because we were able to find, unusually, a person who wanted to buy a 50% interest. As your honors who deal in the day-to-day know, finding someone to buy a 50% interest in a residential real property is difficult. But the trustee and I felt, of course, sympathetic to the debtor not wanting to kick him out of the house by doing a motion under 363-H, or an adversary under 363-H, to get him kicked out of the house. So once we found the 50% interest, we went to the debtor to change his exemptions. Now, keep in mind, the debtor was represented by a counsel who has been a member of the bar since June 1967. I think your honors are aware of Mr. Gillis, and know that he has filed tens of thousands of cases. This is not, if this was a procurer who had English as a second language, I think we would be different. But here we're talking about an experienced counsel who we begged over and over, and it's in the record. Can I approach it from a different angle? Sure. The debtor had a good faith, if ultimately mistaken, belief, I don't own this. When a court said, well, you know, yeah, you do, you do enough that the back to Judge Taylor's wonderful question at the beginning. I mean, if Law v. Siegel basically says, all this activity post-petition doesn't vitiate the exemption, why does it here? Well, again, I think, although, and I'm putting aside equitable stop. And the exemption, well, keep in mind, he tried to convert to a 13. When the writing was on the when Judge Hyme ruled in favor, he was trying to do everything to avoid this consequence. And then it was not again, Judge Hyme ruled on the sale on December 10, 2019. I then did my fee And all along, the debtor's counsel, not Mr. O'Toole, as he explained, he came in late, but prior debtor counsel basically kept saying, well, you know, flaunting the law case in front of me and the And that's kind of, you know, that's where it just was. What does a trustee to do when that occurs? That doesn't bring back to the your honor. What is it? What's a trustee to do when a person doesn't change the exemption? The U.S. Trustee's Office is going to come down on him like a ton of bricks and say, wait a minute, you had this 30 some thousand dollar asset here and you just look the other way. What are you going to do? It's it's it's a really tough position for the trustee and for trustee counsel. I agree it is. Let me, let me, let me, let me do that. I don't know. I mean, I rewind to in your brief, you're saying, I think, you know, you the judge did not rule on equitable estoppel, but you said in the brief, hey, you guys can do it. How could don't we have to send it back if it didn't matter how convinced we might be that equitable estoppel is is a is a live issue. Doesn't that issue have to be decided in the first instance by the bankruptcy court? I would if if if your honors would do that and have Judge Jaime maybe take a second look at it. Now, I did cite to you, Judge Jaime's article in the ABI journal from March 2017, which I think actually goes through a lot of a lot of this. And I'm not sure why the equitable estoppel didn't come up. But I do believe that at the bare minimum, the court needs to take maybe a second look. Court meeting, Judge Jaime, maybe take a second look at that issue. Let me ask you this, because maybe it's in the record and I missed it, but what would the result in an equitable estoppel situation where we're looking at detrimental reliance and we're really looking at your fees, to be perfectly honest, is the metric the same as in this particular case where he's saying no exemption whatsoever or no exemption up to the point of time? What would what would the impact of that be? Well, again, he to this day, the debtor has still dragged his feet and said, I'm just claiming the exemption in the money held by the trustee in his bank account and not in the proceeds from the sale of the home. He has not conceded that he has had ever had and still today does not have an interest or had an interest in that property where he was. Again, he was on the he was on the grantee. He was on not one, but two loans. Sure. And it's pretty straightforward that that that was a correct decision. It wasn't appealed. And that's not why we're here. And that wasn't brief. He viewed himself as having bare legal title and Judge Jaime said, no, man, you've got equitable title to given the way this thing is titled and no one's and that is the law of the case. So I guess I'm well, I'm not going to go there. I just never mind. I have something I want to know and I'm not going to ask the question. So now you got me. Now you got me. Come on. You can do this. I'm wondering what your fees are. Your fees might be applications in there. And I, I, I just don't remember. It was twelve thousand exchange. So an equitable estoppel metric might be slightly different than what's happened here today. Today. But you can see our concern. I mean, we've got to decide bad faith. Most of our arguments seem to be equitable estoppel. Which I think are, which I, I think the trial court can do, but I think it does involve some, I think we agree it involves some findings that really ought to be made there. Right. And, and, and I'm, I'm, I understand that. And, and I would hopefully encourage the panel to strongly consider that. And like I said, it's, it's really similar to the cases that Judge Kwan has published. And, and, and there's also the case from Texas, which was cited in my brief. The, and I, I, I know I'm not going to pronounce this right. In Ray Howard, Lao, L-A-L-I-A-O. The case from Texas from 2016, which looked to state law. The answer is maybe. Right. Excuse me. The answer is maybe. Yeah. Yeah. If somebody looks at it, maybe. Right. Yeah. Yeah. Let's just, this is one of those where, where I understand what was argued, but the judge took a different tangent. And here we are. And here we are. Thank you. Yeah. Yeah. All right. Any, anything else, counsel? No, I don't want to belabor the point and I'll allow Mr. O'Toole his remaining minutes to finish up. Thank you for your time. Thank you very much. All right. So, Mr. O'Toole, you have, I think if I recall, eight minutes or something like that. And I think I'll start by saying you've heard that we have some concerns about the bad faith finding, but in the back, but in the background of this, we, we are questioning the assertion that we can decide equitable estoppel as an appellate panel. What is your view on that? And what, if, if we were to decide, we could decide equitable estoppel, why shouldn't we find equitable estoppel under these circumstances? Well, first, it was not brought up to the appellate court on the equitable estoppel issue, but if you could, I don't know, we would have to, I think we would have to have more, more time and more briefing to actually work on the, the equitable estoppel. The, in retrospect, it's possible that the exemption could have been brought earlier. However, it wasn't through, probably through no one's fault. But the... Well, do you think the court would have to get into questions of why wasn't it asserted earlier and then sort of motive questions? Is that your concern? Oh, I think it would. I think the fact that it happened is enough. I don't think we can go into motives or I don't think that would have any... And the trial court couldn't go into that either in your mind. Is that what I'm hearing? Yes. Okay. Interesting. Okay. All right. Any other, any other responses to Mr. Spitzer's arguments? No. I rest. All right. We will take this under submission. Thank you for your arguments. Again, we will endeavor to get you the decision as soon as possible. Thank you, Your Honor. Thank you.
judges: Taylor, Lafferty, Brand